UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:21-cr-00006-GFVT-EBA-2 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL P. CRAWFORD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

At Defendant Crawford's sentencing, Mr. Crawford raised nine objections to the United States Probation Office's presentence report. The report calculated an offense level of 16 for Mr. Crawford. In essence, Mr. Crawford argued for an offense level of 6. After deciding the objections, the Court ruled that the correct calculation results in an offense level of 14. To further explain the reasons stated on the record, the Court files this memorandum opinion.

**I**

In 2021, a grand jury indicted John Goble, the Scott County coroner, and Mr. Crawford on two counts of conspiracy to defraud the United States under 18 U.S.C. § 371. [R. 1 at 2.] The United States alleged that Mr. Crawford conspired to "commit a crime against the United States, that is, the theft, conversion, and intentional misapplication" of Kentucky State Police-owned property. *Id.* at 3-4. Count 1 specifically pertained to KSP-owned ammunition and Count 2 specifically pertained to KSP-owned firearms. *Id.*

After five days of trial, a jury convicted Mr. Crawford on Count Two: the conspiracy relating to KSP firearms. [R. 172.] The jury could not reach a unanimous decision on Count

One: the conspiracy relating to KSP ammunition.  *Id.*  At sentencing, Mr. Crawford made nine objections to the presentence report prepared by the United States Probation Office.  The objections disputed facts provided in the report, the offense level, and adjustments added to the offense level.  The Court denied Mr. Crawford's factual objections, his objection to the offense level, and his objection to an adjustment for obstruction of justice.  The court sustained Mr. Crawford's adjustment for his role in the offense.  After ruling on the objections, the Court stated that it would prepare a memorandum setting forth in greater detail the reasons for its decisions.

## II

### A

Mr. Crawford objected to the facts alleged in paragraphs seven through eleven of the presentence report.  These paragraphs allege that John Goble, Mitchell Harris, and Mr. Crawford were involved in a scheme to misappropriate ammunition from Kentucky State Police.  The paragraphs detail that Mr. Crawford agreed to store KSP ammunition in the basement of Mr. Goble's office.  Mr. Harris, the KSP armorer, misappropriated the ammunition and gave the ammunition to Mr. Crawford and Mr. Goble.  On several occasions, Mr. Harris would deliver ammunition to Mr. Crawford's residence.  And Around 2016, Mr. Crawford asked Mr. Harris to give Mr. Goble ammunition.

Mr. Crawford denied that he was involved with a scheme with Mr. Goble and Mr. Harris to misappropriate KSP ammunition.  Mr. Crawford argued that the Court could not find that he was involved the scheme because the jury did not convict him on the count relating to the ammunition and other evidence established that he was not involved with the ammunition.

However, trial evidence established by a preponderance of the evidence that Mr. Crawford conspired to misappropriate ammunition.  Mark Sutton, a deputy coroner in Scott

County, testified that three or four times he unloaded cases of ammunition from Mr. Goble's car into the basement of the coroner's office.  [Tr. Day 1 at 55-56.][1]  Mr. Sutton also testified that Mr. Crawford once told him that if anything happened to Mr. Goble, to "get the keys out of his pocket to that basement because what's in there people could go to prison over."  *Id.* at 64. Mitch Harris, a police armorer at the time, testified that on occasion Mr. Crawford would call him and request ammunition.  [Tr. Day 2 at 106-07.]  Mr. Harris stated that he would take ammunition out of the KSP supply vault and give it to Mr. Crawford, often putting it into Mr. Crawford's car or giving it to Mr. Crawford at a firing range.  *Id.* at 106-07, 110.  Mr. Harris also testified that Mr. Crawford would stop by his house and have Mr. Harris put ammunition in Mr. Crawford's car.  *Id.* at 112-13.  Ethan Harris, Mitch Harris's son, confirmed that "at least once" he loaded ammunition that Mitch Harris acquired into Mr. Crawford's car.  *Id.* at 204.

Mitch Harris stated that, at some point, Mr. Crawford told Mr. Harris to not "give [Mr. Goble] ammunition without going through" him.  *Id.* at 111.  After that, Mr. Harris gave Mr. Goble ammunition "several times" and would notify Mr. Crawford that he had done so.  *Id.* Likewise, Mr. Goble admitted in his plea agreement that he and Mr. Crawford agreed to store KSP ammunition in Mr. Goble's office.  Mr. Harris further testified that the ammunition found in the coroner's basement resembles the ammunition that he gave to Mr. Crawford and Mr. Goble. *Id.* at 14-15.  Lastly, Special Agent Holiday testified that phone records show that Mr. Goble called Mr. Crawford the day before the ammunition was moved out of the office basement, the morning the ammunition was moved, and soon after Kentucky police searched the office.  [Tr. Day 3 at 262-63.]

Mr. Crawford disputed that he was ever involved in the misappropriation of KSP

---

[1] The Court's citations to the transcript of the trial are to a rough draft of the transcript.  A final version of the transcript will be filed into the record.

ammunition.  He argued that he never asked Mr. Harris to give ammunition to Mr. Goble, had

"absolutely no clue" that Mr. Goble kept KSP ammunition in the coroner office's basement, and

generally "had nothing to do with any ammunition whatsoever, period."  [Tr. Day 4 at 86-87.]

But the Court found that the testimony of Mr. Sutton, Mitch Harris, and Ethan Harris, supported

by Agent Holiday's testimony and Mr. Goble's plea agreement, established that Mr. Crawford

was involved in a scheme with Mr. Harris and Mr. Goble to misappropriate KSP ammunition.

Thus, Mr. Crawford's first objection was overruled.[2]

**B**

Under the sentencing guidelines, Mr. Crawford's conviction carried a base offense level

of six.  USSG § 2B1.1(a)(2).  The presentence report then increased the offense level by an

additional six because the loss amount exceeded $40,000.  *See* USSG § 2B1.1(b)(1)(D).  The

report reasoned that the loss from the misappropriation of the KSP ammunition was relevant

conduct to Mr. Crawford's conviction and the ammunition's fair market value was

approximately $43,000.  Accordingly, the presentence report calculated an offense level of 12.

Mr. Crawford objected to the offense level.  He argued that the misappropriation of

ammunition was not conduct relevant to his conviction because "[t]he ammunition scheme

alleged in Count 1 is entirely unrelated" to the weapons conspiracy in Count 2 and, even if the

conspiracies were related, "Mr. Crawford was not convicted of the Count 1 conspiracy offense

relating to the misappropriation of ammunition."  [R. 195 at 5.]  Therefore, he contends, the

ammunition cannot contribute to the loss amount and the six-level increase does not apply.

---

[2] As discussed further below, the Court was not foreclosed from finding that Mr. Crawford conspired to misappropriate KSP ammunition because the jury did not convict him on the charge.  *See United States v. Watts*, 519 U.S. 148, 157 (1997) (holding that a jury's verdict does not prevent the sentencing court from considering conduct underlying the charge).

4

**1**

When determining a defendant's offense level, the court considers the defendant's acts that occurred during or in preparation for the offense.  USSG § 1B1.3(a)(1)(A).  The court also considers acts of others that were (1) within the scope of a jointly undertaken criminal activity, (2) in furtherance of the criminal activity, and (3) reasonably foreseeable in connection with the criminal activity.  USSG § 1B1.3(a)(1)(B).

When the offense level is determined by a loss amount, a court groups together acts that were "part of the same course of conduct or common scheme or plan as the offense of conviction."  USSG §§ 1B1.3(a)(2), 3D1.2(d).  Acts constitute part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*."  USSG § 1B1.3 cmt. 5(B)(i).  In addition, acts not part of a common scheme or plan may still be a part of the same course of conduct if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."  *Id.* at cmt. 5(B)(ii).

Courts use the same analysis when determining whether the presentence report should group together the loss amounts from conspiracies relating to the underlying conviction.  For example, in *United States v. White*, the Sixth Circuit affirmed the district court aggregating the loss amounts from two conspiracies because they were part of a common scheme or plan.  1997 U.S. App. LEXIS 15321, at *27 (6th Cir. June 20, 1997).  The court reasoned that the conspiracies were part of a common scheme or plan because they both involved drug distribution and the same individuals, even though the individuals served in "somewhat different roles," the drugs were different types, and the conspiracies were conducted at different times.  *Id.*

Similarly, the court in *United States v. Nichols* affirmed the district court's aggregation based on a common scheme or plan where the acts involved the same parties, "the same substance (cocaine), and the same objectives (the purchase of kilogram quantities of cocaine)." 979 F.2d 402, 414 (6th Cir. 1992).

The Court may consider acts by Mr. Crawford, Mr. Harris, and Mr. Goble relating to the misappropriation of ammunition because it constituted a jointly undertaken criminal activity. *See* USSG § 1B1.3(a)(1)(A)-(B). First, the misappropriation of KSP ammunition by Mr. Harris and Mr. Goble was within the scope of a jointly undertaken criminal activity with Mr. Crawford. As described above, the trial evidence established that Mr. Crawford took an active role in the scheme to misappropriate KSP ammunition with Mr. Harris and Mr. Goble. At one point, Mr. Crawford even specified that Mr. Harris not "give [Mr. Goble] ammunition without going through" him. [Tr. Day 2 at 106-07.] Second, Mr. Harris and Mr. Goble taking KSP ammunition was directly in furtherance of the joint act to misappropriate it. Third, Mr. Harris and Mr. Goble taking the ammunition was reasonably foreseeable. Indeed, it was the point. Therefore, Mr. Crawford could be held responsible for Mr. Harris and Mr. Goble's misappropriation of KSP ammunition.

Moreover, the Court may aggregate the loss amounts from the firearms and ammunition conspiracies. Like in *White* and Nichols, the conspiracies here both involved the same goals (the misappropriation of KSP property) and the same individuals (Mr. Crawford, Mr. Harris, and Mr. Goble). In addition, the conspiracies shared a common victim: the Kentucky State Police. Thus, even though the conspiracies involved different property taken from the KSP armory, they are sufficiently similar to constitute parts of a common scheme or plan. *See* 1997 U.S. App. LEXIS 15321, at *27; 979 F.2d at 414. Because the conspiracies are part of a common scheme or plan,

the Court may aggregate their loss amounts.  *See* USSG §§ 1B1.3(a)(2), 3D1.2(d).

Mr. Crawford did not object to the proposed value of the ammunition.  Rather, Mr. Crawford objected to including the ammunition in the loss amount because the ammunition was not so related to the firearms as to constitute the same conspiracy.  [R. 195 at 4-5.]  Thus, he argues, the ammunition and firearms could not be parts of a common scheme or plan.  *Id.* at 6-7. Indeed, they were separate conspiracies and do not constitute the same offense.  [*See* R. 68 (holding that indicting Mr. Crawford with both conspiracies did not violate the Double Jeopardy Clause).]  But because the conspiracies were "substantially connected to each other by at least one common factor," the presentence report properly included the ammunition loss amount. USSG § 1B1.3 cmt. 5(B)(i); *see White*, 1997 U.S. App. LEXIS 15321, at *27.

## 2

Mr. Crawford also objected to considering the ammunition's loss amount because "Mr. Crawford was not convicted of the Count 1 conspiracy offense relating to the misappropriation of ammunition."  However, a court may consider all relevant conduct when applying the sentencing guidelines.  *United States v. Brika*, 487 F.3d 450, 459 (6th Cir. 2007) (no "limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").  A jury's decision to not convict the defendant of an offense does not prevent a court from considering the conduct underlying that offense.  *See id.*  In fact, a court can consider "conduct on which a jury either deadlocked or rendered a judgment of acquittal."  *Id.*  Therefore, the Court could properly consider conduct on which Mr. Crawford was not convicted.  *See id.*

The Court found by a preponderance of the evidence that Mr. Crawford was responsible

for the acts of Mr. Harris and Mr. Goble within the scope of the conspiracy to misappropriate KSP ammunition and this conspiracy was part of a common scheme or plan as Mr. Crawford's underlying conviction. *See* USSG § 1B1.3(a)(2). Further, the Court may consider acts relating to the ammunition conspiracy despite the jury declining to convict Mr. Crawford of the related charge. *See Brika*, 487 F.3d at 459. Accordingly, the presentence report properly aggregated the loss amounts from the firearms and the ammunition and calculated an offense level of 12.

### C

The presentence report applied a two-level enhancement under the sentencing guidelines based on its determination that Mr. Crawford's trial testimony constituted obstruction of justice. Specifically, paragraph 23 alleged that Mr. Crawford falsely testified at trial to the number of firearms that he purchased. Paragraph 30 applied the two-level enhancement for obstruction of justice. The United States agreed and contended that Mr. Crawford testified falsely about the number of firearms he purchased and his involvement in the ammunition conspiracy. Mr. Crawford objected, arguing that he did not testify falsely and thus cannot receive the obstruction enhancement.

Under USSG § 3C1.1, a defendant's offense level is increased by two if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the prosecution or sentencing of the offense of conviction. The obstruction also must relate to the offense of conviction or a closely related offense. *Id.*

Committing perjury during the defendant's proceedings constitutes obstruction of justice. USSG § 3C1.1 cmt. 4(B). To impose the enhancement based on perjury, a court must find that the defendant made (1) a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony. *See United States v. Payton*, 516 F. App'x 553, 555

(6th Cir. 2013).  The court must identify particular portions of the defendant's testimony that it considers to be perjurious and either make a specific finding for each element of perjury or make a finding that encompasses all of facts underlying a finding of perjury.  *See United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002).

A matter is material when it would "tend to influence or affect the issue under determination."  USSG § 3C1.1 cmt. 6.  For information to be material, it must only be relevant to an issue; the information need not be dispositive or outcome determinative.  *See United States v. Garcia*, 20 F.3d 670, 676 (6th Cir. 1994) (holding that failure to admit to cocaine use was material because it was relevant to choosing a sentence within the guideline range).

### 1

The United States argued that the presentence report correctly applied the obstruction of justice enhancement because Mr. Crawford committed perjury in two ways.  First, the United States argued that Mr. Crawford falsely testified about his role in purchasing the firearms at issue in Count Two.[3]  [R. 194 at 7.]  The United States argued that the record contradicts Mr. Crawford's testimony that he purchased five shotguns.  [R. 190 at 39-40 ("The only thing I can figure out is I bought five shotguns).]  The United States offered testimony by Mr. Harris and money orders that suggested Mr. Crawford's involvement in the misappropriation of other firearms.  [R. 194 at 7-9.]  However, it did not provide sufficient specific facts to show that Mr. Crawford willfully testified falsely about purchasing the shotguns.  Thus, Mr. Crawford's objection to paragraph 23 of the presentence report was sustained.

---

[3] The United States also argued that Mr. Crawford falsely made several other statements relating to the firearms.  [R. 194 at 7-9 (identifying Mr. Crawford's testimony that denied directing Mr. Harris to purchase firearms in other officers' names, denied Mr. Goble's involvement, stated that he "didn't know why [he] paid for them if [he was] a conspiracist, and claimed that Mr. Harris lied).]  However, the United States did not identify specific facts sufficient to establish that the statements were false.

2

The United States also argued that the presentence report correctly applied the enhancement because Mr. Crawford falsely testified about his involvement in the conspiracy to misappropriate KSP ammunition.  [R. 194 at 9-10.]  This argument was more persuasive at sentencing.  Specifically, Mr. Crawford testified during trial that he had "absolutely no clue, no clue that [Mr. Goble] had any ammunition in [the basement]."  [R. 190 at 38; Tr. Day 4 at 86-87.]  Mr. Crawford also testified that he had "nothing to do with any ammunition whatsoever, period."  *Id.* at 39.

For the same reasons the Court denied Mr. Crawford's first objection, the evidence produced at trial demonstrated that Mr. Crawford willfully and falsely testified about a material matter by making these statements at trial.  *See Lawrence*, 308 F.3d 623, 632.  Ethan Harris and Mitch Harris both testified that, on several occasions, they gave Mr. Crawford KSP ammunition. [Tr. Day 2 at 106-07, 112-13, 204.]  Mitch Harris further testified that Harris stated that Mr. Crawford told him to not "give [Mr. Goble] ammunition without going through" him.  *Id.* at 111. Mr. Harris would later give Mr. Goble ammunition and notify Mr. Crawford after.  *Id.*  Mr. Goble admitted in his plea agreement that he and Mr. Crawford agreed to store KSP ammunition in Mr. Goble's office.  And Mr. Crawford once told Mr. Harris that if anything happened to Mr. Goble, to "get the keys out of his pocket to that basement because what's in there people could go to prison over."  [Tr. Day 1 at 64.]  Lastly, Special Agent Holiday testified that phone records show that Mr. Goble called Mr. Crawford the day before the ammunition was moved out of the office basement, the morning the ammunition was moved, and soon after Kentucky police searched the office.  [Tr. Day 3 at 262-63.]

This evidence shows that Mr. Crawford knew of the ammunition in Mr. Goble's office

10

basement and about his own role in the scheme.  By testifying at trial that he did not, Mr. Crawford willfully made a false statement under oath.  [*See* Tr. Day 4 at 86-87.]  Moreover, the false statement was material to his guilt under Count Two as well as the loss amount calculation for sentencing.  Therefore, the Court found that Mr. Crawford made a perjurious statement overruled his objection to paragraph 30 in the presentence report applying the enhancement.

## D

The presentence report also applied a two-level enhancement based on its determination that Mr. Crawford abused a position of trust.  The sentencing guidelines increase the offense level by two if the defendant abused a position of public or private trust "in a manner that significantly facilitated the commission or concealment of the offense."  USSG § 3B1.3.  For the adjustment to apply, the position of trust must have contributed in some significant way to facilitating the commission or the concealment of the offense and not merely have provided an opportunity that could have been afforded to other persons.  *Id.* at cmt. 1; *see also United States v. Williams*, 993 F.2d 1224, 1227 (6th Cir. 1993).

Here, the United States argued that Mr. Crawford's senior position in the Kentucky State Police was a position of public trust.  It also argues that Mr. Crawford used this position to "direct Harris to do his bidding" for the purpose of misappropriating KSP property.  [R. 194 at 11.]  The United States contended that Mr. Crawford used his position to make Mr. Harris an armorer and Mr. Crawford's ability "to direct Mr. Harris's career moves" pressured Mr. Harris into the scheme to take ammunition.  *Id.*

True enough, Mr. Harris testified that he asked Mr. Crawford to assign him to the armorer position.  [Tr. Day 2 at 90-91.]  And perhaps Mr. Harris felt inclined to misappropriate ammunition because Mr. Crawford could "direct [his] career moves."  R. 194 at 11.  However,

the evidence showed that Mr. Crawford agreed with Mr. Harris and Mr. Goble to misappropriate ammunition, not that his position "pressured Harris into acquiescence." *Id.* Because the evidence did not establish that Mr. Crawford abused a position of trust, his objection to paragraph 29 of the presentence report and its application of the two-level enhancement was sustained.

**E**

Based on his previous objections, Mr. Crawford objected to the presentence report's determination of his total offense level, guidelines range of imprisonment, and probation eligibility.  First, he objected to the report's determination that his total offense level was 16.  As described above, Mr. Crawford's objections to the base offense level of 12 and two-level enhancement for obstruction of justice were overruled.  But his objection to the two-level abuse of trust enhancement was sustained.  Therefore, the court sustained in part and overruled in part this objection, finding that Mr. Crawford's total offense level was 14.

Mr. Crawford objected to the report's imprisonment guideline range of 21-27 months based on a total offense level of 16 and a criminal history category of I.  No party disputed Mr. Crawford's criminal history category.  Based on an offense level of 14 and a criminal history category of I, the correct guideline range of imprisonment was 15-21 months.  Therefore, Mr. Crawford's objection was sustained in part and overruled in part.

Lastly, Mr. Crawford objected to the report's determination that he was ineligible for parole because an offense level of 16 is in Zone D of the sentencing guidelines.  Mr. Crawford's correct offense level is 14.  However, the sentencing guidelines place an offense level of 14 in Zone D as well.  USSG § 3B1.3.  Therefore, this objection was denied.

**III**

At sentencing, the Court ruled on Mr. Crawford's nine objections.  This memorandum opinion further explains the reasons for this Court's rulings and concludes that a correct calculation results in an offense level of 14.  In addition, the Clerk of the Court is **DIRECTED** to file a transcript of the trial into the record.

This the 23d day of February, 2023.

Gregory F. Van Tatenhove
United States District Judge